**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

TIM FALLON,

Defendant.

No. CR-03-3068-7-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING**
**DEFENDANT'S SECTION 2255**
**MOTION**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Charges and Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Sentencing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *C. Appeal and § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A. Standards For Relief Pursuant to § 2255* . . . . . . . . . . . . . . . . . . . . 8
    *B. Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *C. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . 11
        *1. Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        *2. Ineffective Assistance Regarding Sentencing Advice* . . . . . . 15
        *3. Failure To Explain Elements Of Offense* . . . . . . . . . . . . . . 18
    *D. Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# *I. INTRODUCTION AND BACKGROUND*

This matter comes before the court pursuant to Tim Fallon's November 7, 2005 *Pro Se* Motion Under 28 U.S.C. §2255 To Vacate, Set Aside Or Correct His Conviction Or Sentence (docket no. 555) ("Motion"). Fallon claims that his trial counsel rendered ineffective assistance of counsel by failing to adequately advise Fallon regarding the comparative sentencing options between going to trial and pleading guilty pursuant to a plea agreement. Fallon claims that his trial counsel erroneously advised him that if he were to proceed to trial he would receive a life sentence if he was convicted. (Motion at 13-14). Fallon claims that if he had been properly advised regarding sentencing options, he would have chosen to go to trial rather than plead guilty as charged. Further, Fallon claims that his trial counsel failed to adequately explain the elements necessary for a conviction pursuant to 18 U.S.C. 924(c)(1)(A)(i), Possession of a Firearm During a Drug Trafficking Offense (Motion, 16-17). Fallon argues that counsel's failure to properly advise him of the elements of the offense to which he was pleading rendered his plea of guilty unknowing and involuntary. Finally, Fallon asserts that "there is a possibility that petitioner is actually innocent of at least the firearm conviction…". (Motion at 12). The government denies that Fallon is entitled to any relief on these claims.

## *A. Charges and Plea*

On September 24, 2003, the government filed a three- count indictment (docket no. 1) against multiple defendants. Tim Fallon was charged in Count 1 of the indictment with conspiracy to commit the following offenses: distributing and possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(A); distributing and possessing with intent to distribute, marijuana in violation of 21 U.S.C. §841(a)(1) and 841

(b)(a)(D); to knowingly and intentionally use a communication facility in causing and facilitating the commission of acts constituting a felony under the Controlled Substances Act (distribution and possession with intent to distribute both methamphetamine and marijuana), in violation of 21 U.S.C. §843(b); and employing, using, persuading, inducing and enticing a person under the age of eighteen, to commit one or more violations of the federal drug laws in violation of 21 U.S.C. §841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 861(a)(1), 861(b), and 846. Although the indictment was a three- count indictment, Tim Fallon was only named in Count 1.

Fallon initially appeared on November 18, 2003 and was arraigned on Count 1 by Chief United States Magistrate Judge Paul A. Zoss. Fallon pleaded not guilty and was released pending trial set for January 5, 2004, on a personal recognizance bond. (docket no. 24). On November 24, 2003, Judge Zoss entered an order (docket no. 54) continuing the trial date to February 2, 2004. On December 31, 2003, after considering a Motion for Continuance by a different defendant in the same case and being advised that other defendants also desired a continuance, Judge Zoss entered an order (docket no. 98) continuing the trial date to March 1, 2004. On January 7, 2004, through counsel, Tim Fallon moved for a continuance (docket no. 99) of the trial date of February 2, 2004, on the ground that additional information was being added to the government's discovery file in the matter and counsel would need additional time to review the material. On January 7, 2004, having previously continued the trial date to March, 12, 2004, Judge Zoss denied Fallon's Motion to Continue as moot. (docket no. 100). On February 4, 2004, the court continued the trial date to April 5, 2004 on the basis that an additional defendant had recently been arraigned and no other defendants had moved for severance. (docket no. 110).

A superseding indictment (docket no. 127) was filed on February 26, 2004. No substantive changes were made to Count 1 of the indictment, the only Count of the indictment under which Fallon was charged. Tim Fallon was arraigned on the superseding indictment, along with other defendants, on March 4, 2004. (docket no.136). Fallon pleaded "not guilty" to the charges in the superseding indictment. Fallon's plea was accepted by the court and his conditions of release remained unchanged. At the arraignment, Judge Zoss extended the trial date, upon the request of one of the defendants and after no objection by any other defendant, to May 3, 2004. (docket no. 136).

On April 2, 2004, Judge Zoss presided over a status conference in the case. During the status conference, Fallon requested that the matter be set for trial on a date certain; however, all other defendants who appeared at the status conference, requested that the matter be continued so the parties could explore settlement options. The Government did not resist a continuance of the trial date. Judge Zoss ordered that the trial date in the matter be continued and set to a date certain of June 21, 2004, as to all defendants. (docket no. 169).

On April 12, 2004, the Prosecution filed a Motion To Revoke Pre-Trial Release (docket no. 177) as to Tim Fallon. The Prosecution had been notified that, during a recent routine traffic stop, Fallon had been found to be in possession of precursors and approximately 1/4 gram of methamphetamine, in violation of the terms and conditions of his pre-trial release. A warrant for Fallon's arrest was issued on April 12, 2004.

On May 11, 2004, Judge Zoss ordered that the matter be set for plea hearing and that the trial date be stricken, as to Fallon only. (docket no. 198). A plea hearing was set for June 17, 2004. The undersigned then set the matter for a sentencing hearing on August 10, 2004. (docket no. 203).

The Prosecution filed a one-count Information (docket no. 233) against Fallon on June 16, 2004, alleging that on or about April 10, 2001, Fallon knowingly possessed one or more firearms, specifically a Baretta semi-automatic .22 caliber rifle and a loaded magazine containing .22 caliber rounds and a 12 gauge shotgun, in furtherance of the drug trafficking crime charged in Count 1 of the superseding indictment, in violation of 18 U.S.C. §924(c)(1)(A)(i).

Fallon filed his Notice of Consent (docket no. 234) to entry of a plea of guilty before a United States Magistrate Judge on June 16, 2004. On June 17, 2004, Judge Zoss ordered Fallon's plea hearing rescheduled to June 23, 2004. (docket no.244). On June 18, 2004, Judge Zoss ordered that Fallon's plea hearing be continued to June 29, 2004. (docket no. 259). Fallon's sentencing hearing was continued to October 1, 2004, by the undersigned on June 22, 2004. (docket no. 267). Fallon's plea hearing was scheduled to occur on July 1, 2004 with the undersigned presiding. (docket no. 272). On July 1, 2004, Fallon filed his Waiver of Indictment (docket no. 281) and acknowledged that the weapon charge could proceed pursuant to information rather than indictment.

A plea hearing occurred on July 1, 2004, during which Fallon appeared with counsel and pleaded guilty to Count 1 of the Indictment (the conspiracy charge) and Count 1 of the Information (the weapons charge), pursuant to a plea agreement. (docket no. 282).

## B. Sentencing

On October 1, 2004, Fallon was sentenced to 120 months on Count 1 of the Indictment and to 60 months on Count 1 of the Information, to be served consecutively, for a total of 180 months (docket nos. 378, 379). Fallon was sentenced to supervised release following incarceration for a term of 60 months on each Count, served

concurrently. A $200 special assessment was ordered against Fallon and all fines were waived. At the sentencing hearing, Fallon challenged the constitutionality of the sentencing guidelines pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), (Sentencing Trans. 2-3), and also argued that he should receive a reduction in the base offense level from 32 to 30 for acceptance of responsibility. (Sentencing Trans. 4). The Prosecution argued against awarding Fallon a two-level reduction based on acceptance of responsibility on the basis that his arrest for similar conduct and continued drug use while on pre-trial release was inconsistent with acceptance of responsibility. The court held that the guidelines were unconstitutional, that Fallon was not bound by his stipulation in the plea agreement to application of the guidelines, that if the guidelines were applicable Fallon would receive a two-level reduction for acceptance of responsibility, and sentenced Fallon in accordance with the mandatory statutory minimums for each count. (Sentencing Trans. 4-5). Count 1 of the Indictment carried a statutory mandatory minimum sentence of 120 months and Count 1 of the Information carried a statutory mandatory minimum sentence of 60 months, which by statute could not be served concurrently with any other sentence. (Sentencing Trans. 4-5,8). The undersigned also entered an alternative sentence in the event the guidelines were determined to be constitutional, finding that Fallon's base offense level would have been 32 pursuant to the guidelines, with a two level reduction to a base level of 30, for acceptance of responsibility, and a criminal history category of II. The guideline range at this level would have been 108 to 135 months. putting the bottom of the guideline range below the statutory mandatory minimum. Thus, the statutory mandatory minimums would have "trumped" the guideline sentencing range and Fallon's sentence pursuant to the guidelines would have also been 120 months on Count 1 of the Indictment and 60 months on Count 1 of the Information, to be served consecutively, for

a total of 180 months. (Sentencing Trans. 4-5, 8). Judgment was entered accordingly on October 5, 2004. (docket no. 379).

## C. Appeal and § 2255 Motion

On November 4, 2004, the Prosecution filed a Notice of Appeal (docket no. 450). This appeal was subsequently dismissed upon motion by the Prosecution on February 2, 2005. (docket no. 505).

Fallon filed this *Pro Se* Motion on November 7, 2005, seeking to vacate his sentence on both Counts, requesting permission to file his Motion In Forma Pauperis, and requesting the appointment of counsel as well as a hearing on his Motion (docket no. 555). On April 26, 2007, Fallon's motion to proceed in forma pauperis and request for appointment of counsel were granted. (docket no. 622). The court ordered Fallon to file a Brief in Support of his Motion on or before June 1, 2007. Count-appointed counsel filed his Notice of Appearance (docket no. 624) on behalf of Tim Fallon on May 7, 2007, and filed an Unresisted Motion for Extension (docket no. 625), seeking additional time in which to file a Brief on June 1, 2007. The court granted Fallon's motion for an extension and ordered Fallon to file a brief on or before July 6, 2007. (docket no. 626). The Prosecution was ordered to file a response brief on or before August 3, 2007. Fallon, through counsel, filed a Brief In Support of defendant's Motion To Vacate Sentence And Judgment Pursuant To 29 U.S.C. §2255 (docket no. 628) on July 6, 2007. The Prosecution filed an Unresisted Motion for Extension of Time (docket no. 629) to file its reply brief on August 1, 2007, and was given up to and including September 4, 2007, to file its reply brief. (docket no. 630). Fallon was ordered to file a Reply Brief on or before September 24, 2007. The Prosecution filed its Court Ordered Response To Defendant's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. §2255 (docket

no. 639) on September 4, 2007 and Fallon filed his Reply Brief (docket no. 641) on September 24, 2007.

In support of his Motion, Fallon asserts that his plea of guilty was not knowingly or voluntarily made because his trial counsel failed to properly advise him regarding the possible sentence he would receive if convicted at trial as opposed to pursuant to a plea agreement, on Count 1 of the Indictment (the conspiracy count). Fallon claims that he would have chosen to go to trial on the conspiracy count rather than entering a plea of guilty pursuant to a plea agreement. Fallon additionally argues that his trial counsel failed to properly advise him of the elements of the crime he was alleged to have committed in Count 1 of the Information (possession of a firearm in furtherance of a drug trafficking crime), and that he would not have pleaded guilty to Count 1 of the Information if he had been properly informed of the elements of the offense. The Prosecution disputes that Fallon is entitled to relief on any of these grounds.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant to § 2255

Turning to the legal analysis of Fallon's claims, in light of the evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized

in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of Fallon's claims for § 2255 relief.

## B. Preliminary Matters

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006)(quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted). In this case, the court concludes that no evidentiary hearing is required on any issue, because the record "conclusively show[s] that [Fallon] is entitled to no relief" on his claim of ineffective assistance of counsel. 28 U.S.C. § 2255.

## C. Ineffective Assistance Of Counsel

### 1. Applicable Standards

Fallon's *pro se* Motion raises various complaints about the performance of his trial counsel, but primarily asserts that his trial counsel provided him with ineffective assistance of counsel by erroneously advising him regarding his sentencing risks and options and failing to advise him adequately regarding the nature of the weapons offense. (Motion 11). Fallon's claims are further refined by court-appointed counsel as follows: 1) Fallon claims that his Sixth Amendment guarantee to effective assistance of counsel was denied when trial counsel "failed to possess adequate knowledge of the sentencing guidelines and sentencing exposure when advising Petitioner whether or not to accept the plea agreement," and 2) Fallon's Sixth Amendment guarantee to effective assistance of counsel

was denied when trial counsel and the court "failed to advise him of the elements of the charges against him." (Defendant's Brief 6).

Fallon asserts that his trial counsel told him that he would receive a life sentence if he were to go to trial and be found guilty. (Motion at 11,13). In light of this alleged advice, Fallon claims that he felt that he had no choice other than to accept the Prosecution's plea agreement rather than going to trial. (Motion at 11, 17-18). Fallon alleges that his plea of guilty was not knowingly or voluntarily made and was, therefore, invalid. (Motion at 11, 17-18).

In support of his claim that he was not properly advised regarding the nature of the weapons offense in Count 1 of the Information, Fallon claims that his trial counsel was ineffective in failing to properly advise him regarding the "nexus" requirement of the offense. (Motion at 16-17). Fallon asserts that neither his counsel nor the court, during the plea taking, advised him of the elements that the Prosecution would have to prove to obtain a conviction of the offense. (Motion at 16). Fallon asserts that he would not have pleaded guilty to this offense if he had been aware of the elements as they related to the facts in his case. (Motion at 19). The Prosecution argues that Fallon should be denied relief on both grounds.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion,

the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Fallon is entitled to relief on his § 2255 motion turns on whether or not he can satisfy the standards applicable to his "ineffective assistance" claims.

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating

that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). To demonstrate "prejudice" in the context of a guilty plea, Fallon must establish that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59, 106 S. Ct. 366, 88

L. Ed. 2d 203 (1985). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if the petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

### 2. *Ineffective Assistance Regarding Sentencing Advice*

Fallon claims that his plea of guilty was not knowingly or voluntarily made and was therefore invalid because he received erroneous advice from trial counsel regarding his sentencing exposure. "A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed, self-determined choice if the accused relies upon counsel who performed ineffectively in advising him." *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981) (citing to *United States ex rel. Healy v. Cannon*, 553 F.2d 1052, 1056 (7th Cir. 1977)). Without doubt, to be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent, and because a guilty plea constitutes a waiver of various constitutional rights, it must be made with sufficient awareness of relevant circumstances and likely consequences. *See, e.g.*, *United States v. Martinez-Cruz,* 186 F.3d 1102, 1104 (8th Cir. 1999). The Eighth Circuit Court of Appeals has recognized that a plea agreement may not be knowing and voluntary when it is the result of the ineffective assistance of counsel. *See*, *DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000)(citing to *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366 (1985)). At the same time, a defendant's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of verity. *Nguyen v. United States,* 114 F.3d 699, 703 (8th Cir. 1997).

Fallon claims that his trial counsel erroneously advised him that if he were to proceed to trial he would receive a life sentence if he was convicted. (Motion at 13-14).

The record simply does not support Fallon's allegation that he was ever told that he would definitely receive a life sentence if he were to proceed to trial. The record reveals, instead, that Fallon was informed, as required, that the statutory maximum sentence he could receive, in the event he was convicted of either offense, was a life sentence. Trial counsel states, in an affidavit attached to the Prosecution's Response filed herein, that "While a maximum sentence [was sentence][sic] of life was possible under the statute at no time did I tell Mr. Fallon or any of his family that he would receive a life sentence if he went to trial". (Prosecution's Response, Ex. 1, at 4). Trial counsel further states that "… I never told him he would get life. I discussed potential sentencing ranges with him on numerous occasions." (Prosecution's Response, Ex. 1, at 4). Fallon was also advised by the court during his plea hearing that a life sentence was the maximum sentence he may receive upon conviction under either count, pursuant to the relevant statutes. (Plea Trans. at 15-18). During his plea-taking hearing, Fallon indicated that he understood the nature of the maximum penalties. (Plea Trans. at 15-18). The court was obligated to inform Fallon of the applicable mandatory minimum and maximum sentences pursuant to Rule 11(c)(1), now Rule 11(b)(1), of the Federal Rules of Criminal Procedure. Fallon did not indicate during his plea hearing, even though he was given every opportunity to do so, that he did not understand the nature of the statutory mandatory minimum and maximum penalties.

Further, the record indicates that trial counsel spent some time with Fallon discussing the merits of his case and the comparative consequences between going to trial or accepting a plea agreement. Fallon indicated during his plea hearing that he agreed that his trial counsel had mailed him a copy of the plea agreement to review and had subsequently met with him while he was incarcerated to go through each of the paragraphs of the agreement. (Plea Trans. at 8). Fallon acknowledged that he had read the plea

agreement, had a satisfactory opportunity to discuss any questions he had about it with his trial counsel and that he understood each and every paragraph of the plea agreement. (Plea Trans. at 8-9). Trial counsel indicates that she discussed possible sentencing ranges with Fallon on numerous occasions. (Gov't. Response Ex. 1, at 4). Trial counsel indicates that she "explained to [Fallon] the perils of trial" and that "a guilty plea would get him substantially less time than a trial". (Gov't. Response Ex. 1, at 5).

The court conducted a thorough discussion of the voluntariness of Fallon's guilty plea during the plea hearing. (Plea Trans. 30 -31) At no point in this process did Fallon indicate that his decision to plead guilty was anything other than a knowing, voluntary decision based on his best interests.

In light of all of these circumstances, the record strongly indicates that trial counsel explained the statutory minimums and maximums, including the possibility of a life sentence, to Fallon, as part of a discussion regarding the full range of possible penalties and did not tell Fallon that he would automatically receive a life sentence if he were to proceed to trial and be found guilty as opposed to accepting the plea agreement. Because the court believes that trial counsel discussed the possibility of a life sentence as part of a broader discussion regarding sentencing possibilities, Fallon cannot show that his trial counsel "made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *U.S. v. Rice*, 449 F.3d at 897.(quoting *Strickland*, 466 U.S. at 687). When a defendant chooses to plead guilty after receiving advice from his counsel, the voluntariness and intelligence of the plea depend "on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Brewer v. State of Iowa,* 19 F.3d 1248, 1250 (8th Cir. 1994)(citing *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985) in turn quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970)). Counsel's performance

here did not fall "'below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 522 (2003) (quoting *Strickland*, 466 U.S. at 688). This is especially true in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003). Fallon has not demonstrated that his trial counsel provided ineffective assistance and therefore this claim must fail.

### 3.    *Failure To Explain Elements Of Offense*

Fallon next claims that his trial counsel's failure to explain the elements of Count 1 of the Information (possession of a firearm in furtherance of a drug trafficking crime), constituted ineffective assistance of counsel and that but for this failure, he would not have pleaded guilty. The Prosecution claims that Fallon was sufficiently aware and informed of the elements of the offense prior to his plea hearing.

The record amply demonstrates that Fallon understood the elements of the weapons offense. Trial counsel states via affidavit (Gov't. Response, Ex. 1, 4, pp.14) that "I had explained to Mr. Fallon that guns found 'at the ready' are enough evidence of 'in furtherance' if there are drugs found nearby." During Fallon's plea hearing, he indicated that all of the facts appearing in the Stipulation of Facts contained in the plea agreement were true and accurate. (Plea Trans. at 10). Further, during the plea hearing, trial counsel indicated that she had explained the nature of the charges in both Count 1 of the Indictment and Count 1 of the Information to Fallon. (Plea Trans. at 10). Fallon indicated that he had had an opportunity to go through the nature of the charges with his attorney

and acknowledged that his attorney had gone through the elements of the charges with him. (Plea Trans. at 11). The Plea Agreement signed, with each paragraph initialed by Fallon, defined the elements of the offense at paragraphs 35A-35F. Both trial counsel and Fallon indicated that trial counsel had gone through each and every paragraph with him. (Plea Trans. at 9). During the plea hearing, the court explained that the elements were additionally detailed in a "Rule 11 Letter" and provided a copy to Fallon asking Fallon if he understood that the Prosecution would have to prove each element of each offense. Fallon indicated that he understood. (Plea Trans. at 11).

The Eighth Circuit Court of Appeals has held that "To establish that a defendant possessed a firearm in violation of §924(c), the Prosecution must prove that (1) he committed a drug trafficking crime, and (2) he possessed a firearm in furtherance of that crime." *United States v. Saddler,* 538 F.3d 879, 888 (8th Cir. 2008)(quoting *United States v. Garcia-Hernandez,*530 F.3d 657, 661 (8th Cir. 2008). In order to establish that the firearm was possessed 'in furtherance' of the drug trafficking crime, there must be evidence of a nexus between possession of the firearm and the drug trafficking convictions. *See*, *United States v. Thorpe,*447 F.3d 565, 568 (8th Cir. 2006). However, "a jury may find the requisite nexus when a firearm is discovered in close proximity with drugs so as to support an inference that the firearm is for the protection of the drugs." *United States v. Saddler,* at 888 (quoting *United States v. Williams,* 512 F.3d 1040, 1044 (8th Cir. 2008), *cert. denied*, 128 S.Ct. 2918 (2008)); *see also, United States v. Close*, 518 F.3d 617, 619 (8th Cir. 2008) (holding that a quickly accessible firearm in close proximity to drugs helps establish a nexus between the defendant's possession of the firearm and the drug crime). In *United States v. Hamilton*, 332 F.3d 1144, 1150 (8th Cir. 2003) *rhg. and rhg. enbanc denied.*, the Eighth Circuit Court of Appeals in applying the *Ceballos-Torres* rule that "simultaneous possession of drugs and a firearm is not alone sufficient to support

a conviction," see *United States v. Ceballos-Torres,* 218 F.3d 409, 414 (5th Cir. 2000), found that "the nearness of the guns to the drugs in the defendant's residence supported an inference that the guns were possessed so as to be readily available to protect the drugs," thereby satisfying the "nexus" requirement. In *Hamilton,* the weapon owned by the defendant was found loaded and easily accessible in the defendant's apartment along with a substantial amount of drugs and money thereby supporting the inference that the defendant's gun protected his drugs and money against robbery. *Hamilton,* 332 F.3d at 1150. While the *Ceballos-Torres* court did state that more than mere possession would be required to establish a nexus between drug activity and a firearm, it also established that the "accessibility of the firearm" and the "proximity to the drugs" were factors to consider in a determination of whether the firearms were possessed "in furtherance" of the drug trafficking crime. *Ceballos-Torres*, 218 F.3d at 415. Here, a Baretta semi-automatic .22 caliber rifle was found in Fallon's bedroom under his bed and a loaded magazine containing .22 caliber rounds was found in his dresser along with methamphetamine, marijuana, and drug paraphernalia; thus, the accessibility of the firearm and the proximity to the drugs were such that it was not unreasonable for counsel to determine that there was sufficient evidence for a jury to find that Fallon possessed the firearms to protect the drugs.

Further, trial counsel's explanation of the required nexus, especially in light of all of the other explanations provided to Fallon, together with his opportunity to raise such questions prior to pleading guilty, demonstrate that counsel's performance did not fall "'below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 522 (quoting *Strickland*, 466 U.S. at 688). This is especially true in light of the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong

[the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *Walker*, 324 F.3d at 1040. Fallon has not demonstrated that his trial counsel provided ineffective assistance and therefore this claim must fail.

Further, Fallon cannot demonstrate prejudice even if the court were to find that trial counsel rendered ineffective assistance by failing to adequately apprise Fallon of the nature of the offense. While a detailed explanation of the "in furtherance" element of the offense may not have been orally provided by the court during the plea hearing, the record above is more than sufficient to establish that the court's inquiry into whether Fallon adequately understood and had been advised of the nature of the offense prior to his guilty plea, satisfied due process concerns. Not only did the court ask Fallon if he understood the nature of the offense, but provided Fallon, during the plea hearing, with documents that detailed the elements of the offense in relation to the facts to which Fallon had previously stipulated to and had acknowledged as true and accurate during the plea hearing. (Plea Trans. at 7-10, 12). "Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S. Ct. 2253, 2259 (1976). Because the record clearly demonstrates that Fallon had been adequately advised and understood the nature of the offense with which he was charged prior to pleading guilty, there was no prejudice.

## D. Certificate of Appealability

Denial of Fallon's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claim therein. Whether or not a certificate of appealability should issue is controlled by 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> * * *
>
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that Fallon has not made a substantial showing of the denial of a constitutional right on his § 2255 claim. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find this court's assessment of Fallon's claim debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Fallon does not make the requisite showing to satisfy § 2253(c) on his claim for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).

## III. CONCLUSION

Upon the foregoing, defendant Fallon's *Pro Se* Motion Under 28 U.S.C. § 2255 (docket no. 555) is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 13th day of January, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA